CHOTARD, COUNTY TREASURER, *v.* SMITH.

4-6804                                              163 S. W. 2d 319

Opinion delivered June 22, 1942.

*Ed Trice,* for appellant.

*J. R. Parker* and *Ohmer C. Burnside,* for appellee.

GRIFFIN SMITH, C. J. The appeal is from a circuit court order directing the county treasurer to pay two warrants: one in favor of Frank Masters for $84, the other in favor of Rowland Smith for $58. It is appellant's contention the law as declared in *White* v. *Chotard, County Treasurer,* 202 Ark. 692, 152 S. W. 2d 552, is being violated. The opinion was delivered June 9, 1941, the holding being that the initiated salary act did not authorize the Chicot county judge to employ a road superintendent at a fixed salary of $150 per month. It was

said, however, that the court did not intend to lay down a rule under which the county judge would be prohibited from employing competent men to handle county machinery and equipment.

The claim filed by Masters, dated July 1, 1941, was to compensate for fourteen days "servicing county equipment" at $6 per day. Smith's claim covered similar services for thirteen and a half days at $4 per day.

The cause was heard by the judge, a jury having been waived. Factual findings were that Masters had performed the services, rate of pay being sixty cents per hour for a ten-hour day. Masters' contract of employment required him to prepare claims for other road workers and to keep their time; also to receive and account for shipments of materials ordered by the county judge, etc. He "looked after" machinery in a warehouse, and performed various engineering tasks incident to work done by men who used a large amount of machinery. Other duties required of Masters were mentioned by the circuit court.

Smith's duties required him to transport county road employes to and from work. He also assisted in maintaining road machinery.

County Judge Warfield testified that work done by Masters was of a technical nature ". . . and absolutely necessary to prevent destruction of machinery or 'botching up' roads and bridges." These activities, said the judge, were akin to engineering, as distinguished from supervisory work.[1]

---

[1] The question was asked:—"Isn't it a fact that Masters does not perform any mechanical labor for the county, but that he acts as a kind of coördinator with the WPA, and that [his classification is that of a deputy] to you?" Answer:—"He can't be a deputy. He does all the things you mention. Masters has a full-time job. It takes more than ten hours a day. He gets up at daylight and comes to the county road office, checks over all the machinery, sees whether the units are properly oiled and greased, checks to see that the operators keep the machines tightened up. I am down there myself most of the mornings —not every morning, but when I can I am down there to lay out the day's program. If I am not down there, I have previously planned and gone over the program with Masters. He never puts the machines anywhere until I have told him where they are to go."

There are approximately 800 miles of roads in Chicot county. The judge testified that twenty miles of new highways had been completed under his administration, in addition to twenty or thirty miles of "dumps." Seventy-five or eighty miles of dirt road had been repaired and graded, and, generally speaking, essential machinery had been over all county roads "one to three or four times" during the year. Equipment consisted of two caterpillar tractors, two graders, three diesel patrols, two "jeeps," three large trucks, and three pickup trucks.

WPA apportioned $114,000 to the county on condition one-fourth the sum should be matched. Money was not available, but an arrangement was made whereby the county was credited with allowances for use of machinery. "In this way this year," said the county judge, "we have . . . received $86,000 worth of expenditures in nine months and our contributions have run $29,254.50. That [represents] rental on machinery and what cash we could pay for materials furnished. For twelve months last year the total amount of expenditures received [from WPA] was $61,478.64, and the county's contribution amounted to $13,357."

In letting machinery to WPA, the county supplied operators. There was testimony that the work done by Masters was of a character requiring mechanical and engineering ability, and the judge did not have requisite technical knowledge.

In deciding that the county judge, under the initiated act for Chicot county, was not authorized to employ a road supervisor, this court recognized the practical difficulties that might arise and expressly disclaimed an intent to substitute its mandate for discretion of the county judge. What we held was that the county judge could not relieve himself of duties enjoined upon him as road commissioner by shifting them to an appointed superintendent and adding to the county budget a fixed salary not contemplated by the electorate. To prevent impracticable limitations upon authority, there was the very positive statement that the judge could not be denied

authority to employ competent men to handle machinery and equipment.

*Prima facie* it appears that Judge Warfield is doing by indirection what this court said he could not do directly. But there is this difference: In the White-Chotard case essence of the controversy was that a superintendent had been employed at $150 per month to perform duties assigned the judge.

In the case at bar payment of $84 representing services rendered by Masters for fourteen days at sixty cents an hour is the principal issue. Incidentally, it is shown that Masters is regularly retained. This employment, however, is distinguishable from that involved in the previous case. Whether continuous use of Masters has been necessary is not the question. The dispute submitted to the court had to do with the warrant for $84. The result, in substance, was a finding that Masters served in the capacity of a foreman, and that insofar as the controverted item was involved, services had been rendered. In other words, the claim was not fraudulent; nor was the county judge without power to authorize the work to be done, in consequence of which it was his duty to approve the claim.

There is substantial evidence to support the judgment. Whether subsequent employment was necessary is a different question, even though the record indicates that it was. Conduct of the county judge in the employment of a foreman, or "coördinator," as his position is denominated in the testimony, would justify disallowance of a claim if evidence should show that services alleged to have been rendered were fictitious, that the amount claimed was absurd, that the transactions were fraudulent, and that the county was being cheated.

These elements are not present in the instant case. Hence, the judgment is affirmed.

HUMPHREYS, J. (Dissenting). It seems to me that appellant, R. C. Chotard, county Treasurer, was justified in refusing to pay the warrants issued in favor of Frank

Masters in the amount of $84 and the one issued in favor of Rowland Smith for $58 for servicing the county's road machinery. It is clearly a violation of Initiated Act No. 1, commonly called the County Salary Act, especially § 2 thereof.

That section is as follows: "The county judge shall receive as his salary, to cover, all and singular, his services and duties as county judge, judge of the juvenile court, judge of the court of common pleas, road commissioner, and county farm supervisor, and any and all other services rendered by him to the county, the sum of $2,500, and no more.

"The county judge shall serve as road commissioner, and the quorum court shall have the right to make a reasonable appropriation from the road funds of the county for an expense account to him as such road commissioner, not to exceed, however, the sum of $500 per year."

I think anyone capable of operating any of the county's machinery must necessarily know how to oil, grease and tighten up the taps on the piece of machinery he operates. In my opinion it is unnecessary to employ a man by the day at $6 per day the year through to oil, grease and screw up the taps on the machinery used on the roads. As stated above the operator of the machinery is capable of performing those duties if he has the ability to operate the machinery. The initiated act makes it the duty of the county judge to serve as road commissioner and such duties as Frank Masters and Rowland Smith are performing are the duties imposed on the county judge under the county salary act. Such duties as are being performed by Frank Masters and Rowland Smith are just such duties as were being performed by them before the case of *White* v. *Chotard,* 202 Ark. 692, 152 S. W. 2d 552, was handed down by this court and the attempt to pay them for oiling, greasing and tightening up taps on the road machinery is to all intents and purposes an attempt to circumvent and destroy the tenor and effect of the case of *White* v. *Chotard, supra.* I regard it as a subterfuge to strike down the initiated act No. 1, commonly called the county salary law, and the

construction placed upon that act by this court in the case of *White* v. *Chotard, supra.*

Mr. JUSTICE MEHAFFY and Mr. JUSTICE HOLT join me in this dissenting opinion.